■    THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICIA COHEN, Appellant.—Appeal by defendant from a judgment of the County Court, Westchester County, rendered March 2, 1979, convicting her of murder in the second degree and criminal possession of a weapon in the second and third degrees, upon a jury verdict, and imposing sentence. Judgment modified, on the law, by reversing the conviction of criminal possession of a weapon in the second degree (count two of the indictment), and the sentence imposed thereon, and the said count is dismissed. As so modified, judgment affirmed. The defendant's estranged husband sustained a fatal cranial gunshot wound in the parties' bed in the marital home in the evening of September 24, 1976 (he died in the early morning of the day following). The defendant explained to the police that the deceased was concerned over financial and professional difficulties. She also said that he had arrived in the early evening, with a bottle of wine, to celebrate their reconciliation. In addition to drinking the wine, he took some sleeping pills, became morose and despondent and cried himself to sleep. She, too, took a sleeping pill and retired. She was awakened by a thunderous sound, which was evidently a shot from the gun she had borrowed the evening before out of her fear of burglary since she was alone in the house during the marital separation. The prosecution presented evidence that the deceased had made future vacation plans with his former wife, to whom he planned to return, and that he was preparing to divorce defendant. It was to finalize that arrangement that he visited her. In addition, there were no financial or professional difficulties. On that state of the proof, we find that defendant's guilt was proven beyond a reasonable doubt and that every hypothesis but guilt was excluded to a moral certainty (cf. *People v Vitalis,* 67 AD2d 498; *People v Mitchell,* 64 AD2d 119). Moreover, we think that the verdict was not affected by the tests that were introduced to show the characteristics of the weapon fired at varying distances through a variety of objects, although in other circumstances their admission into evidence might indeed constitute reversible error. (Compare *Uss v Town of Oyster Bay,* 37 NY2d 639, with *People v Fiori,* 123 App Div 174.) We note that the tests on the white blotter paper were twice specifically accepted by the defense counsel so no objection to them may be heard now. The murder could not have been committed without defendant also being guilty of the crime of possession of the weapon that was used (as charged in count two of the indictment) and, therefore, the latter conviction must be reversed (see CPL 300.40, subd 3; *People v Williams,* 57 AD2d 850). We do not believe that *People v Perez* (45 NY2d 204) mandates a different result. Mollen, P. J., Hopkins and Mangano, JJ., concur.

Titone, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: In my opinion, prejudicial error mandating a new trial was committed by the trial court in allowing certain scientific test results to be admitted in evidence in support of the prosecution's theory that the gunshot wound of the deceased was not self-inflicted but was caused by the conscious act of defendant. At the trial, the position taken by the defense was that defendant did not fatally shoot her husband in the head with a .380 Llama semiautomatic pistol, but that he may have committed suicide by shooting himself with that weapon. To controvert the hypothesis of suicide, the prosecution adduced certain expert evidence, to which defendant objected, designed to demonstrate that in view of the absence of powder burns in the area of the fatal wound, the distance from which the shot was fired ruled out suicide and thus, under the circumstances, suggested that defendant deliberately shot her husband. Specifically, to show that the victim was shot at a distance of four inches or more from his head, and thus to rule out suicide, testimony was adduced from Doctor Gary Paparo, the medical examiner who participated in the autopsy, and from Deputy Sheriff Joseph Reich, a ballistic test firearms examiner, about tests they conducted by firing the same weapon and similar ammunition which caused the fatal wound. Paparo testified that he anesthetized a rabbit, shaved off a portion of the animal's fur, and then attached a large swatch "of human hair", folded double so that it was an inch and a half thick. Then Reich fired at the rabbit with the weapon from a distance of four inches. No powder burns were found on the rabbit's skin when the human hair was unfolded. Powder burns were found on the animal after a second shot was fired at it from the same distance, without its fur being shaved and without human hair being attached. Reich also testified, over objection, as to tests done by firing the weapon at filter paper covered with human hair at distances ranging from 1 to 12 inches, the hair being changed each time. Such tests were made to show how much powder would burn, and how much smoke and gas would go through the hair to the filter paper. At four inches or less, there was considerable residue. At 5, 6 and 12 inches, there was no residue, "No noticeable particles". Again over objection, Reich testified to the weapon being fired at a "styrofoam mannequin head in conjunction with a synthetic hair wig." The afore-described tests were presented to the jury as evidence showing, *inter alia*, that the "powder" range or "near" range of the pistol and ammunition through hair was four inches or less, and that since there were no powder burns at the site of the wound, the pistol was fired more than four inches from the site, or out of "powder" range injury. The results of other tests were also submitted to the jury to show that the victim did not fire the fatal shot since it was impossible for him to have directed the weapon's fire at the point of entry of the bullet, from a distance of greater than four inches. It seems clear from the record that although the experiments described by Doctor Paparo and Deputy Sheriff Reich complied with the rule dealing with firearm tests, no foundation was laid by either witness as to the similarity or dissimilarity of rabbit skin to human skin, that filter paper was a proper medium to simulate human skin, and the effect hair on the skin would have to powder pattern and effect. Moreover there was no limiting instruction by the court as to what purpose such evidence was being offered. Evidence of an experiment to test the truth of testimony that a certain thing occurred is not admissible where the conditions attending the alleged occurrence and the experiment are not shown to be similar. The similarity of circumstances goes to the admissibility of the evidence and must be determined by the

court. Such evidence should be received with caution, and only admitted when it is obvious to the trial court, from the nature of the experiments, that the jury will be enlightened rather than confused. In many instances, a slight change in the conditions under which the experiment is made will so distort the result as to wholly destroy its value as evidence and make it harmful, rather than helpful *(Hisler v State,* 52 Fla 30; *McLendon v State,* 90 Fla 272). It cannot be assumed that the effect of pistol fire upon human flesh and upon paper would be essentially similar, in respect to resulting powder burns or marks, when the requisite supporting proof is lacking *(McLendon v State, supra).* In sum, it cannot be inferred from this record that the experiments described by Doctor Paparo and Deputy Sheriff Reich were made with like means on the same kind of matter or substance, or were based on a similarity of conditions or circumstances whereby the results produced betray with some certainty and uniformity a common similitude or agreement and, as a consequence thereof, furnish a safe foundation for an inference of truth of the matter sought to be established (see *People v Fiori,* 123 App Div 174). Since the evidence adduced by the People as to defendant's guilt was wholly circumstantial and not overwhelming, I do not believe it can be asserted with any modicum of certainty, that the jury verdict was not based to an appreciable degree on the firearms tests erroneously admitted into evidence by the trial court. Therefore, I vote to reverse and to remand the case for a new trial.